```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2

 3   United States of America,     ) Criminal Action
                                   ) No. 21-cr-291
 4                 Plaintiff,      )
                                   ) PLEA HEARING
 5   vs.                           ) PUBLIC
                                   )
 6   Thomas F. Sibick,             ) Washington, DC
                                   ) March 3, 2023
 7                 Defendant.      ) Time:  2:06 p.m.
     _____
 8
                    TRANSCRIPT OF STATUS CONFERENCE
 9                          HELD BEFORE
             THE HONORABLE JUDGE AMY BERMAN JACKSON
10                 UNITED STATES DISTRICT JUDGE

11   _____

                        A P P E A R A N C E S
12

13   For Plaintiff:      Kimberly Paschall
                         Cara Anne Gardner
14                       DOJ-USAO
                         555 4th Street, NW
15                       Washington, DC  20001
                         (202) 252-7009
16                       Email:  Cara.gardner@usdoj.gov
                         Email:  Kimberly.paschall@usdoj.gov
17
     For Defendant:      Stephen F. Brennwald
18                       Brennwald & Robertson, LLP
                         922 Pennsylvania Avenue, SE
19                       Washington, DC  20003
                         (301) 928-7727
20                       Email:  Sfbrennwald@cs.com

21   _____

22   Court Reporter:          Janice E. Dickman, RMR, CRR, CRC
                              Official Court Reporter
23                            United States Courthouse, Room 6523
                              333 Constitution Avenue, NW
24                            Washington, DC  20001
                              202-354-3267
25
```

```
1          *  *  *  *  *  *  *P R O C E E D I N G S*  *  *  *  *  *  *  *

2                  THE COURTROOM DEPUTY:  Good afternoon, Your Honor.

3     This afternoon we're scheduled for an arraignment and a plea

4     agreement hearing.  This is criminal case No. 21-291-1, the

5     United States of America v. Thomas F. Sibick.  Mr. Sibick is

6     present and in the courtroom.

7                  Will counsel for the government, followed by defense

8     counsel, please approach the lectern, identify yourself for the

9     record.

10                 THE COURT:  Wait.  I don't seem to have the set of

11    questions I was going to ask today.  It must have been right

12    under this file on my desk.  Do you want to get it?

13                 But we can go through the arraignment.  We can at

14    least put our names on the record at this point.  I apologize.

15                 MS. PASCHALL:  Good afternoon, Your Honor.  Kimberly

16    Paschall for the United States.

17                 THE COURT:  Good afternoon.

18                 MR. BRENNWALD:  I think Ms. Guarder might be joining,

19    too, I don't know.

20                 Good afternoon.  Mr. Stephen Brennwald for

21    Mr. Sibick.

22                 THE COURT:  Mr. Brennwald, good to see you.  I'm glad

23    you're back on your feet and with us again.  I apologize for

24    the brief delay.

25                 I understand that what's about to happening this
```

1    afternoon is Mr. Sibick is going to enter a plea of guilty to

2    an information.  Is that correct?

3              MR. BRENNWALD:  Yes, Your Honor.

4              THE COURT:  In order to accomplish that, the first

5    thing we need to do is swear him in, and we also need to

6    arraign him on the new information.  So we can take care of

7    that.

8              MR. BRENNWALD:  Do you want him to come up?

9              THE COURT:  Yes.  You'll need to join your lawyer.

10   And that's where you're be hanging out for the rest of the

11   proceedings.

12              (Whereupon the defendant was duly sworn.)

13              THE COURTROOM DEPUTY:  I'm going to ask you

14   questions.  So you can lower your hand.

15              Are you Thomas F. Sibick?

16              THE DEFENDANT:  Yes, sir.

17              THE COURTROOM DEPUTY:  Are you the defendant who's

18   named in this information?

19              THE DEFENDANT:  Yes, sir.

20              THE COURTROOM DEPUTY:  Your Honor, please let the

21   record reflect that both the defendant and his attorney have

22   received a copy of the superseding information which has been

23   filed in this case.

24              Mr. Sibick, you are charged under criminal case

25   number 21-291-1, in a three-count superseding information

1    charging you with the following:

2          Count No. 1, 18 United States Code § 111(a)(1),

3    assaulting, resisting, or impeding certain officers.  And

4    Counts Nos. 2 and 3, under 18 United States Code § 661, theft.

5          Mr. Brennwald, do you waive formal reading of the

6    superseding information on behalf of your client?

7          MR. BRENNWALD:  We do.  And we enter pleas of not

8    guilty to each count.

9          THE COURTROOM DEPUTY:  Thank you very much.

10         THE COURT:  All right.  Now, the purpose of the

11    hearing this afternoon, Mr. Sibick, is for you to make a

12    decision, whether you want to go to trial on the government's

13    charges against you or whether you want to enter a plea of

14    guilty.  That's an important decision, so it's vital that you

15    understand everything that's going on and that I'm going to be

16    explaining to you.  And so I want to tell you two rules right

17    up front.

18         The first is:  If I ask you a question and it's not

19    clear what I'm getting at and you need it clarified, feel free

20    to say, Judge, can you please explain that?  And, second, if

21    you want to talk to your lawyer before you answer any question

22    I ask you, you have the right to do that, too.  You just need

23    to tell me.  So do you understand that much?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  And do you understand that you've just

1    been sworn and that means that if you don't answer my questions

2    truthfully, that that could be another offense of perjury or

3    making a false statement?

4             THE DEFENDANT:  Yes, Your Honor.

5             THE COURT:  All right.  Now, as I understand,

6    Mr. Brennwald, he's agreeing to plead to Count 1 of the

7    information; assaulting, resisting, or impeding certain

8    officers, in violation of 18 U.S. Code Section 111(a)(1), and

9    also two counts of theft, in violation of 18 U.S. Code § 661,

10   and that at the time of his sentencing, the pending indictment

11   will be dismissed.

12            Also, as I understand it, the government is not

13   seeking a change in the defendant's bond status between now and

14   the time of his sentencing.

15            Is that your understanding of the general scope of

16   what's about to happen?

17            MR. BRENNWALD:  Yes, Your Honor.

18            THE COURT:  And, Mr. Sibick, is that your

19   understanding of what we're about to accomplish here today?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  Now, for me to decide whether I should

22   accept your guilty plea or not, I have to make sure that you

23   understand the terms of the plea and the consequences of the

24   plea.  And to do that, the law requires me to ask you certain

25   questions, and some of them are personal, but they're all

1    designed so that I can be sure that you know what you're doing

2    today.

3              Can you tell me how old you are?

4              THE DEFENDANT:  Thirty-seven, Your Honor.

5              THE COURT:  Okay.  And can you read and write?

6              THE DEFENDANT:  Say again, Your Honor.

7              THE COURT:  I said, can you read and write?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Can we move closer --

10             MR. BRENNWALD:  He can't hear, but he can read and

11   write.

12             THE COURT:  There you go.

13             How far did you go in school?

14             THE DEFENDANT:  I have a master's degree, Your Honor.

15             THE COURT:  And where were you born?

16             THE DEFENDANT:  I was born at Great Lakes Navel Base.

17             THE COURT:  Now, have you taken any alcohol or drugs

18   in the last 48 hours or any medicine that could affect your

19   ability to understand what you're doing by pleading guilty?

20             THE DEFENDANT:  Not anything that would affect my

21   ability.  Just what I'm prescribed, Your Honor.

22             THE COURT:  I think you need to keep your voice up a

23   little bit.  I heard you say, "Not anything that would affect

24   my ability --"

25             THE DEFENDANT:  Not anything that would affect my

1    ability, just prescribed medication that I'm on.

2            THE COURT:  The medication you're on, does it make

3    you drowsy in any way?

4            THE DEFENDANT:  No.

5            THE COURT:  Okay.  Are you suffering from any kind of

6    physical condition or illness or psychological condition that

7    affects your ability right now to focus on what you're being

8    asked or your ability to understand what's happening and to

9    answer my questions?

10           THE DEFENDANT:  No, Your Honor.

11           THE COURT:  Okay.  Have you ever received any

12   treatment for any type of mental illness or emotional disorder?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  And is that ongoing right now?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  And what would that be?

17           THE DEFENDANT:  That would be weekly counseling and

18   every three weeks I see a therapist -- or, medication

19   management to, you know, just make sure everything is in line

20   and we're on the right regimen per the prescribed.

21           MR. BRENNWALD:  Do you mean the actual condition?

22           THE COURT:  Yes.  And I understand it's personal, and

23   if you want to come to the bench and just tell me this in

24   private, we can seal this portion of the transcript.  But I do

25   need to ask what you're being treated for.

1              MR. BRENNWALD:  There is a reporter in the room, so I

2      would -- I would rather -- as nice as she is, I would rather it

3      be private.

4              THE COURT:  So you're staying you're going to submit

5      a report that tells me what it is --

6              MR. BRENNWALD:  Or I can just approach.

7              THE COURT:  -- or there already is one?

8              MR. BRENNWALD:  I can approach the bench, if you

9      want, whatever.

10              THE COURTROOM DEPUTY:  He'll come to the bench.

11              THE COURT:  That's what I was asking, if you wanted

12      to come to the bench and tell me.

13              THE DEFENDANT:  You want me at the bench?

14              THE COURT:  He's going to give you headphones so that

15      you can listen to what your lawyer is telling me.  I just need

16      to know -- I think I know what's going on, but I need to know

17      what's going on for the record.  So it is --

18              MR. BRENNWALD:  Can I approach?

19              THE COURT:  Yes.

20              And, Jan, so this short portion of the transcript

21      will be sealed.  Mr. Haley will turn on the husher.

22              (Sealed bench discussion:)

23      ████████████████████████████

24      ██████████████████████████████████████████████████████

25      ███████████████████████████████████████████████████



8          (Open court:)

9          THE COURT:  All right.  Now, Mr. Sibick, have you

10   received a copy of the indictment that was pending against you,

11   and also the information that you were arraigned on this

12   morning -- this afternoon?  Basically the written charges in

13   this case.

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And have you discussed the charges and

16   the case in general with your lawyer?

17          THE DEFENDANT:  At much length, Your Honor.

18          THE COURT:  Yes.  And are you completely satisfied

19   with the services of your lawyer?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And have you had enough time to talk with

22   him and discuss the case and the plea offer and whether or not

23   you should accept it?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Okay.  Ms. Paschall, is the government

1  aware of exculpatory information that has not been produced to

2  the defendant?

3           MS. PASCHALL:  No, Your Honor.

4           THE COURT:  Now, Mr. Sibick, you have certain rights

5  in a criminal case, and I'm going to go over all of them with

6  you.  First of all, most important, you have a right to plead

7  not guilty and to have a jury trial in this case.  And that

8  would mean that 12 citizens from the District of Columbia would

9  sit there and they would be the ones who listen to the evidence

10  and determine your guilt or innocence at the trial.  Do you

11  understand that you have a right to a jury trial?

12           THE DEFENDANT:  I do, Your Honor.

13           THE COURT:  And do you understand that if you had had

14  a trial, you would have the right to be represented by your

15  lawyer at that trial?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  And do you understand that at a trial you

18  would have the right, through your lawyer, to confront and

19  cross-examine the witnesses against you?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  And do you understand that you would have

22  the right to present your own witnesses, and the right to

23  subpoena them, to require them to be here to testify in your

24  defense?

25           THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  And do you understand that if there were

2    a trial, you would have the right to testify and present

3    evidence on your behalf if you wanted to, but you wouldn't have

4    to testify or present any evidence at all if you didn't want to

5    because you can't be forced to present evidence in your own

6    trial.  Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And do you also understand that unless

9    and until I accept your guilty plea, you are presumed by the

10   law to be innocent and it's the government's burden to prove

11   your guilt beyond a reasonable doubt?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Now, do you understand if you plead

14   guilty in this case and I accept the plea, you're giving up all

15   the rights I've just described because there will be no trial?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  And I have a document where that's been

18   put in writing, it says, at the top, "*United States of America*

19   *versus Thomas F. Sibick*, Waiver of Trial by Jury.  With the

20   consent of the United States Attorney and the approval of the

21   Court, the defendant waives his right to trial by jury."

22   There's a line under that, "Defendant" is typed underneath it,

23   and there's a handwritten signature above it.

24         Are you the one who signed your name on this waiver

25   of trial by jury?

1          THE DEFENDANT:  I am, Your Honor.

2          THE COURT:  Okay.  I'm going to sign it, too.

3          And, also, you have the right, since one of the

4     counts you're pleading guilty to is a felony, to be indicted by

5     a grand jury on that charge and not just have -- not just plead

6     to an information, which is basically a piece of paper that the

7     government types up with the charge on it.  Do you understand

8     that with respect to your plea to the information, you're

9     giving up your right to have that evidence presented to a grand

10    jury and have them vote whether there's probable cause that

11    there was a crime committed and that you committed it?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And so the waiver of indictment is also

14    something that we've written down and it says:  "I, Thomas

15    Sibick, who is accused of Count 1, 18 U.S. Code § 111(a)(1),

16    assaulting, resisting, or impeding officers, and also the two

17    theft counts, in violation of 18 U.S. Code 661, having been

18    advised of the nature of the charges, the proposed information

19    and of my rights, hereby waive in open court today, March 3rd,

20    prosecution by indictment and consent that the proceeding may

21    be by information, rather than indictment."

22          Are you the one who signed your name above the line

23    that has the word "Defendant" typed under it?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Now, do you understand that if you went

1    to trial and you were convicted, you would have a right to

2    appeal your conviction to the Court of Appeals and have a

3    lawyer help you prepare that appeal?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  And so do you understand that by pleading

6    guilty, you're giving up your right to appeal also, including

7    the right to appeal your sentence, unless I give you more than

8    the statute tells me I can impose, or I sentence you outside of

9    what we determined the guideline range would be, or if your

10   lawyer is ineffective in connection with your sentencing.  But

11   otherwise, you can't appeal your conviction.  Do you understand

12   that?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  And there are Federal Rules of Civil

15   Procedure and a statute, 28 U.S. Code § 2255, that give people

16   the right, even after a conviction, to come back in court and

17   challenge the legality of those convictions.  Do you understand

18   that you are giving up your right to do that as well, except in

19   the limited circumstance if there's newly discovered evidence

20   or if your lawyer was ineffective?

21             THE DEFENDANT:  I do, Your Honor.

22             THE COURT:  And I understand that this is difficult

23   to go through.  If we get to a point where you need to take a

24   break, just let me know.  Okay?

25             THE DEFENDANT:  (Nods head.)

1          THE COURT:  There's also Federal Rules of Evidence

2     and Federal Rules of Civil Procedure that say if somebody

3     pleads guilty and for some reason or another the plea is

4     withdrawn and then there's a trial, that the government can't

5     use at trial the fact that you pled guilty as evidence against

6     you.  But in this plea agreement, you're giving up the

7     protection of those rules as well.

8          So if for some reason you end up going to trial in

9     this case -- which you're shaking your head no, that you don't

10     want to do -- if you did, for some reason, the fact that you

11     stood here and told me you were guilty could be used as

12     evidence against you.  Do you understand that?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And so do you still want to plead guilty

15     in this case and to give up your right to a trial and your

16     right to appeal and all the rights that I just explained that

17     you would have if your case went to trial?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Okay.  Now, at this point I'm going to

20     let you have a seat while I ask the prosecutor to tell you and

21     me what happened in this case.

22          I want you to listen carefully when she's talking,

23     Mr. Sibick, because when she's through, I'm going to ask you if

24     everything she told me is accurate.  And if there's anything

25     that she says that's not accurate, I want you to tell me.  Do

1        you understand that?

2                THE DEFENDANT:  Yes, Your Honor.

3                THE COURT:  All right.  So, Ms. Paschall, can you

4        please tell the Court and the defendant what the government's

5        evidence would show if this case went to trial?

6                MS. PASCHALL:  Yes.  Thank you, Your Honor.  If the

7        case *United States versus Thomas Sibick* had gone to trial, the

8        government's evidence would have shown beyond a reasonable

9        doubt:  The U.S. Capitol, which is located at First Street

10       Southeast, in Washington, D.C., is secured 24 hours a day by

11       the U.S. Capitol Police.  Restrictions around the U.S. Capitol

12       include permanent and temporary security barriers and posts

13       manned by the United States Capitol Police.  Only authorized

14       people with appropriate identification are allowed access

15       inside the United States Capitol.

16               On January 6, 2021, the exterior plaza at the

17       United States Capitol was closed to members of the public.  On

18       January 6, 2021 a joint session of the United States Congress

19       convened at the United States Capitol, which is located at

20       First Street Southeast, Washington, D.C.

21               During the joint session elected members of the

22       United States House of Representatives and the United States

23       Senate were meeting in the United States Capitol to certify the

24       vote count of the Electoral College of the 2020 presidential

25       election which had taken place on November 3rd, 2020.  The

1    joint session began at approximately 1 p.m.  Shortly

2    thereafter, by approximately 1:30 p.m., the House and Senate

3    adjourned to separate chambers to resolve a particular

4    objection.  Vice President Mike Pence was present and

5    presiding, first in the joint session and then in the Senate

6    chamber.

7            As the proceedings continued in both the House and

8    the Senate with the Vice President present and presiding over

9    the Senate, a large crowd gathered outside the United States

10   Capitol.  As noted above, temporary and permanent barricades

11   were in place around the exterior of the United States Capitol

12   and the U.S. Capitol Police were present and attempting to keep

13   the crowd away from the building and the proceedings inside

14   underway.

15           At approximately 2 p.m. certain individuals in the

16   crowd forced their way up and over the barricades and officers

17   of the U.S. Capitol Police and the crowd advanced to the

18   exterior facade of the building.  The crowd was not lawfully

19   authorized to enter and remain in the building.  And prior to

20   entering the building, no members of the crowd submitted to

21   security screenings or weapons checks by the U.S. Capitol

22   Police officers or other authorized security officials.

23           At such time the certification proceedings were still

24   underway and the exterior doors and windows of the

25   United States Capitol were locked or otherwise secured.

1       Members of the U.S. Capitol Police attempted to

2  maintain order and keep the crowd from entering the Capitol.

3  However, shortly after 2 p.m. individuals in the crowd forced

4  entry into the United States Capitol, including by breaking

5  windows and by assaulting members of law enforcement, as others

6  in the crowd encouraged and assisted those acts.

7       The riot resulted in substantial damage to the

8  United States Capitol, requiring the expenditure of more than

9  $1.4 million for repair.

10      Shortly thereafter, at approximately 2:20 p.m.,

11  members of the United States House of Representatives and the

12  United States Senate, including the President of the Senate,

13  Vice President Pence, were instructed to, and did, evacuate the

14  chambers.  Accordingly, all proceedings of the United States

15  Congress, including the joint session, were effectively

16  suspended until shortly after 8 p.m. the same day.

17      In light of the dangerous circumstances caused by the

18  unlawful entry to the United States Capitol, including the

19  danger posed by individuals who had entered the U.S. Capitol

20  without any security screening or weapons checks, congressional

21  proceedings could not resume until after every unauthorized

22  occupant had left the United States Capitol and the building

23  had been confirmed secured.

24      The proceedings resumed at approximately 8 p.m.,

25  after the building had been secured.  Vice President Pence

1   remained in the United States Capitol from the time he was

2   evacuated from the Senate chamber until the session resumed.

3        On January 6, 2021, U.S. Capitol Police requested

4   assistance from the Metropolitan Police Department and other

5   law enforcement agencies in the area to protect the Capitol,

6   impede more people from entering the Capitol, and expel the

7   crowd that was already inside the Capitol.  Multiple MPD

8   officers and other law enforcement officers came to assist,

9   including MPD Officer Michael Fanone.  The officer was wearing

10  full MPD uniform, to include a marked helmet and tactical vest,

11  with his police badge, duty belt, and official insignia clearly

12  displayed.

13       At approximately 3 p.m. a group of Capitol Police and

14  MPD officers had formed a police line at one of the two glass

15  doorways on the Lower West Terrace that leads inside the

16  United States Capitol building to prevent the mob from entering

17  the building through that entrance.

18       At around 3:08 p.m. the defendant joined the rioters

19  in the Lower West Terrace archway who were pushing against

20  police line.  The defendant advanced into the tunnel in front

21  of the mob, near the police line.  At 3:11 p.m. the defendant

22  turned around and moved outside of the tunnel.  After he was

23  outside the tunnel, he said to another man in the crowd, who

24  thanked him for his service, "Let's go.  Let me just get

25  refreshed."

1    The defendant took a video of himself in the mob near

2 the inauguration ceremony stage of the Lower West Terrace,

3 screaming into the camera, "Just got teargassed, but we're

4 going, baby, we are going.  We're pushing forward now."  The

5 video, which the defendant posted to Instagram, pans the crowd

6 with the caption, "Wildest experience of my life," two

7 exclamation points.

8    At approximately 3:15 p.m. Officer Fanone came to the

9 front of the police line.  As officers began to push the

10 rioters back from the doors at around 3:18 p.m., another

11 individual pulled Officer Fanone through the tunnel and into

12 the crowd of rioters outside.  Once Officer Fanone was in the

13 mob, various members of the crowd physically assaulted Officer

14 Fanone.  During the course of the attack Officer Fanone was

15 tased, kicked, punched, pushed, grabbed, and hit with objects

16 from the crowd, as well as having his limbs restrained while a

17 rioter tried to remove his service weapon forcibly from its

18 fixed holster.  A member of the mob threatened to take Officer

19 Fanone's gun and kill him.

20    While the mob was attacking Officer Fanone, the

21 officer's body-worn camera shows the defendant reaching towards

22 the officer at 3:19 p.m. and forcibly removing the officer's

23 badge and radio, both of which were securely fixed to the

24 officer's tactical vest.  When the defendant made physical

25 contact with the officer in order to forcibly remove the

1    officer's badge and police radio, the defendant knew that the

2    officer was engaged in the performance of his official duties

3    as an officer of the Metropolitan Police Department who was

4    assisting the United States Capitol Police.

5          At 3:20 p.m. Officer Fanone's body-worn camera shows

6    individuals in the crowd surrounding Officer Fanone to protect

7    him from his attackers and then escorting him back to the

8    police line.  At 3:36 p.m. the defendant posed for a picture of

9    himself holding and pointing to a U S. Capitol Police riot

10   shield.

11         On January 7th, 2021, the defendant posted on

12   Instagram a video in which he stated that he was, quote, very

13   worried for America.  Our system is broken.  Our party is

14   divided.  The people need to heal.  What happened yesterday was

15   a disgrace.  An innocent life was lost.  But the people are mad

16   and the people have spoken.  The violence is no different than

17   the protest we saw all summer long, end quote.

18         The FBI conducted an initial interview with the

19   defendant on January 27th, 2021.  At the time agents did not

20   know the defendant had participated in the attack on Officer

21   Fanone.  The defendant told agents that he saw members of the

22   mob attack an officer and tried to get his gun.  The defendant

23   claims that he tried to reach the officer and pull him away,

24   but was unable to do so, and that he decided to leave, fearing

25   for his own life and the officer's.

1          On February 2nd the defendant called an agent to tell

2     him he planned to email more information about the assault of

3     the police officer that he witnessed.  When asked about his

4     previous account, the defendant said that he did not have

5     anything different to add, that his previous account was

6     accurate, and again falsely claimed that he had not

7     participated in the assault on the officer in any way.

8          On February 23rd, 2021, the FBI re-interviewed the

9     defendant after agents had watched Officer Fanone's body-worn

10    camera video and saw clear evidence that the defendant had

11    stolen the officer's badge and radio.  Although the defendant

12    initially failed to mention his possession of these items,

13    after being shown the screenshots, the defendant admitted that

14    he grabbed the officer's badge and radio, but claims that he

15    had reached in to try to help the officer.

16         The defendant also stated that he pressed the radio's

17    emergency button to summon help.  MPD's record of the use of

18    the emergency button showed that it was pressed at 3:37 p.m.,

19    approximately 16 minutes after others had already escorted

20    Officer Fanone back to the safety of the police line.

21         During the interview, when asked what he did with the

22    badge and radio, the defendant changed his story three times.

23    After first stating that he had dropped the badge and radio

24    immediately and left, he then told the agents he had carried

25    the items away, but dropped them in the trash on Constitution

1    Avenue, next explaining he needed to recant that statement and

2    the defendant admitted he brought the badge and radio home to

3    Buffalo and then claimed that he had intended to turn these

4    items over to the FBI, but instead threw them in a dumpster.

5            On February 24th, 2021, the defendant told agents

6    that the dumpster was behind the Lenox Hotel in Buffalo.  Two

7    days later, however, after an agent told the defendant that the

8    FBI planned to check the hotel's video surveillance, the

9    defendant admitted that he had buried the badge in his

10   backyard.  The defendant stated that he purchased a metal

11   detector to locate the badge and then gave the agent a bag

12   containing Officer Fanone's badge, covered in mud.  The radio,

13   which cost $5,500.79 was never recovered.

14           As a result of the attack, Officer Fanone sustained

15   significant and painful injuries.  As defendant Daniel

16   Rodriguez applied a taser to the back of Officer Fanone's neck,

17   Officer Fanone experienced excruciating pain and was rendered

18   momentarily helpless.  He can be heard screaming on his

19   body-worn camera.  The tasing caused burn marks to the back of

20   Officer Fanone's neck that has resulted in scarring.

21           Shortly after being tased, Officer Fanone's body-worn

22   camera shows efforts of those around him trying to elicit a

23   response from him, indicating that he lost consciousness.

24   Officer Fanone was then transported to the emergency room.

25           The following portions of the statement of offense

1    have been redacted for the public, but they have been provided

2    to the Court and to the defense.

3              Finally, the defendant does not have first-hand

4    knowledge of the actions of Kyle Young, Albuquerque Head, or

5    Daniel Rodriguez in Washington, D.C. on January 6, 2021 and,

6    therefore, could not testify truthfully about their activities

7    on that day.

8              THE COURT:  All right.  Thank you.

9              Okay.  Mr. Brennwald and Mr. Sibick, can you return.

10             Mr. Sibick, is what the prosecutor just told me a

11   true and accurate statement of what you did in this case?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  And so did you in fact reach in and

14   remove the officer's badge and radio from his vest?

15             THE DEFENDANT:  I did, Your Honor.

16             THE COURT:  And did you take those items away from

17   the scene that day, knowing that he was a police officer

18   performing his duty at the time?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Now, I have a document in front of me

21   that I believe the prosecutor was reading from when she was

22   telling me what the facts were.  And it has your name, again,

23   at the top, *United States of America versus Thomas Sibick*, and

24   it's entitled Statement of Offense.

25             On the last page of the document there's a paragraph

1    entitled Defendant's Acknowledgment.  And it says:  "I, Thomas

2    Sibick, have read the statement of offense and have discussed

3    it with my attorney.  I fully understand this statement of the

4    offense.  I agree and acknowledge by my signature that this

5    statement of offense is true and accurate.  I do this

6    voluntarily and of my own free will.  No threats have been made

7    to me, nor am I under the influence of anything that could

8    impede my ability to understand this statement of the offense

9    fully."

10           It has the date, February 21st, 2023, filled in and

11   then there's a line for a signature.  Under the signature it's

12   typed "Thomas F. Sibick, Defendant," and then there is a

13   handwritten signature above.  Are you the one who signed this

14   statement of offense, acknowledging that it was true?

15           THE DEFENDANT:  I am, Your Honor.

16           THE COURT:  Okay.  And I ask that people, when

17   they're pleading guilty -- this isn't just special for you, I

18   do it in every single case -- that they initial and date every

19   single page of the statement of offense as a signal to me that

20   I read every page and I agree with every page; somebody didn't

21   just give it to me and I signed the last page.

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Are you the one who initialed every page

24   of this document, TFS, on February 21st, 2023?

25           THE DEFENDANT:  Yes, Your Honor, I did that.

1              THE COURT:  I have another document in front of me as

2      well, and it's the letter written from the prosecutors to your

3      lawyer setting out the terms of the plea agreement.  Do you

4      have a copy of the agreement up there?

5              THE DEFENDANT:  I do, Your Honor.

6              THE COURT:  Okay.  And have you gone over it with

7      your lawyer?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  And this document also, on the last page,

10     has a paragraph entitled Defendant's Acceptance and it says:

11     "I've read every page of this agreement and have discussed it

12     with my attorney, Steve Brennwald.  I fully understand this

13     agreement and agree to it without reservation.  I do this

14     voluntarily and of my own free will, intending to be legally

15     bound.  No threats have been made to me, nor am I under the

16     influence of anything that could impede my ability to

17     understand this agreement fully.  I'm pleading guilty because I

18     am in fact guilty of the offenses identified in this agreement.

19              "I reaffirm that absolutely no promises, agreements,

20     understandings, or conditions have been made or entered into in

21     connection with my decision to plead guilty, except those set

22     forth in this agreement.  I'm satisfied with the legal services

23     provided by my attorney in connection with this agreement and

24     matters related to it."

25              And under that, as well, there's a line for the date,

1    there's a line for a signature, under which it's typed "Thomas

2    Sibick, Defendant," and there is a handwritten signature above

3    it.

4             Are you the one who signed this document, accepting

5    the plea agreement?

6             THE DEFENDANT:  I am, Your Honor.

7             THE COURT:  And did you initial and date every page,

8    letting me know that you'd gone over every page of it with your

9    lawyer?

10            THE DEFENDANT:  Yes, I did, Your Honor.

11            THE COURT:  Okay.  Now, I'm not going to read every

12   word of it here in court this afternoon, but I want to ask you,

13   first of all, whether you have any questions about any of it

14   while you're standing here right now?

15            THE DEFENDANT:  No, Your Honor.

16            THE COURT:  Okay.  So as I understand it, you're

17   agreeing to plead guilty to the offenses of assaulting,

18   resisting, or impeding certain officers, in violation of 18

19   U.S. Code § 111(a)(1), and two counts of theft, the badge and

20   the radio, in violation of 18 U.S. Code § 661.

21            Do you understand that if I accept your guilty plea

22   in this case, with respect to the § 111(a)(1) count alone, the

23   resisting or impeding or assaulting an officer, you could be

24   subject to a sentence of up to eight years of imprisonment?

25            THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And do you understand that I could also

2    sentence you to pay a fine of up to $250,000 for that offense

3    alone?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And do you also understand that if you

6    serve a term of incarceration, then when you get out, I could

7    also sentence you to serve a term of what's called supervised

8    release of not more than three years?

9          THE DEFENDANT:  I do, Your Honor.

10          THE COURT:  And do you understand that supervised

11    release means that once you're released, you're under the

12    supervision of the court, with certain rules and conditions you

13    have to follow, and if you violate those conditions, then you

14    could be sent back to prison for an additional period of time.

15    Do you understand that?

16          THE DEFENDANT:  I do, Your Honor.

17          THE COURT:  Okay.  And do you also understand that

18    for each of the theft counts, the violations of 18 U S. Code

19    § 661, I could sentence you to a sentence of up to five years

20    imprisonment for each one?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Okay.  And do you understand that I could

23    also sentence you to pay a fine for each of those of up to

24    $250,000?

25          THE DEFENDANT:  I do, Your Honor.

1        THE COURT:  Okay.  And I could also require that you

2    serve a period of supervised release of up to a year on each

3    count?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  Okay.  Now, these are all felonies, and

6    there's a requirement that you pay a special assessment to the

7    court.  Do you understand that you have to pay $100 for each

8    count and, therefore, you would have to pay a $300 special

9    assessment to the court?

10       THE DEFENDANT:  Yes --

11       THE COURT:  Okay.

12       THE DEFENDANT:  -- Your Honor.

13       THE COURT:  I know that you're -- it's very difficult

14   for you, but we do have someone whose job it is to take down

15   what you say, so I don't think it would be good to whisper.

16       THE DEFENDANT:  Sorry.

17       THE COURT:  So you understand about the assessment?

18       THE DEFENDANT:  Yes, Your Honor.

19       THE COURT:  And do you understand that if you don't

20   pay any fines or restitution, there might be interest that you

21   have to pay?

22       THE DEFENDANT:  I do, Your Honor.

23       THE COURT:  Okay.  Now, do you also understand that I

24   could order you to pay restitution, the value of the items that

25   you took in this case?

1          THE DEFENDANT:  I do, Your Honor.

2          THE COURT:  And is there also an agreement in this

3   plea agreement to pay restitution for part of the damages to

4   the U.S. Capitol on that day?

5          THE DEFENDANT:  That is correct, Your Honor.

6          THE COURT:  And so you understand that you're going

7   to have to be ordered to pay that, too?

8          THE DEFENDANT:  I do, Your Honor.  I'm sorry.

9          THE COURT:  All right.  Now, I'm not going to

10   sentence you today.  In deciding on what an appropriate

11   sentence is, I have to consider a number of factors that are

12   set out in a statute, 18 U.S. Code § 3553(a).  They require me

13   to think about a number of things.

14          The first thing I have to think about is the nature

15   and circumstances of the offense, which we've all been talking

16   about a great deal.  But I also have to learn more -- other

17   things.  I have to learn about your history and characteristics,

18   and then I have to think about the need for the sentence to

19   fulfil a number of purposes:  To protect the community, to

20   punish you, to deter you and other people from doing anything

21   like this again, and I have to make sure that your sentence is

22   consistent with sentences imposed in similar situations.

23          As part of that exercise, one of the things I have to

24   consider is what the U.S. sentencing guidelines would

25   recommend.  Congress created a Sentencing Commission and it has

1    issued a set of complex guidelines for judges to consider in

2    determining what the sentence should be in a criminal case.

3    And it sets up kind of presumptive ranges of sentences for each

4    offense and then they could go up or down based on various

5    factors, and they can go up based on your criminal history.

6    You've been -- all that has been explained to you?  Yes?

7              THE DEFENDANT:  Yes, it has, Your Honor.

8              THE COURT:  And so while we may have some idea based

9    on your criminal history and the nature of the offense what

10    your sentencing range might be after it's calculated, we won't

11    know until the probation office prepares a presentence report.

12    That comes to you first, so that you can make any objections

13    that you have to it, the government can make any objections and

14    ask for corrections.  And only after that whole process does it

15    come to me and then I have to determine what your sentencing

16    guideline range would be.  And also, once I determine what the

17    range is, I can vary from that range, but I can never sentence

18    you to more than the maximum sentence we just talked about.

19              Have you and your lawyer talked about the sentencing

20    guidelines and how they might affect your case?

21              THE DEFENDANT:  Yes, we have, Your Honor.

22              THE COURT:  Okay.  And as far as I can tell from

23    reading the plea agreement, that with respect to the sentencing

24    guidelines for the assaulting or impeding an officer count,

25    § 111 count, the guidelines start at a base offense level,

1    under § 2A2.2(a), a level 14.  Six levels get added under

2    § 3A1.2(b) and (c) because the victim was a government officer.

3    And there is another two-level enhancement for obstructing and

4    impeding the administration of justice.

5          And where the parties differ is whether there should

6    be yet another enhancement of five more levels under

7    § 2A2.2(b)(3)(B) because the victim suffered a serious bodily

8    injury.  The government is going to try to argue to me that I

9    should apply that enhancement.  And it's agreed that at the

10   sentencing you get to argue that I shouldn't.  And so at this

11   point we don't know whether I will or whether I won't.  I

12   haven't looked into the law under the area and I understand

13   there's a legitimate dispute about it.

14         So that's where we are with respect to that count.

15         MR. BRENNWALD:  If I could, Your Honor.  The

16   reason -- one of the reasons that it took so long to resolve

17   this -- and we had continuance after continuance -- is because

18   of this one factor and the government finally agreed to allow

19   us to argue it.  So just so the Court knows, this agreement has

20   been negotiated strenuously for months.

21         THE COURT:  Well, and I knew that you all were

22   talking to each other and I assumed everybody had good reasons

23   for continuing the conversation and I don't hold the fact that

24   it took a while against anyone.

25         The parties are agreed that with respect to the theft

1    charges, under the guidelines you would start at the base

2    offense level of 6 under 2B1.1.  Given that the loss is less

3    than $6500, there's no additional points added for something

4    more than that.  Since the items were taken from the person of

5    another, under § 2B1.1(b)(3) there's an enhancement of two

6    levels.  Because the victim was a government officer there's an

7    enhancement of six levels.  And given the involvement of

8    obstructing or impeding the administration of justice, there's

9    a enhancement of two levels.

10           So the parties are agreed that the guidelines would

11   come out to a Level 16 with respect to the theft charges.  But,

12   again, there's a dispute as to whether two more levels would be

13   added to the base level, given the risk of serious bodily

14   injury to the officers.  And that is one, again, where the

15   government is going to tell me all the reasons why they think

16   it applies legally and factually and your lawyer will tell me

17   all the reasons why he thinks it doesn't legally and factually

18   and I will have to decide.

19           Counts get joined based on their relationship to each

20   other and the guidelines have rules that you follow to figure

21   out once you've figured out the guidelines from one count and

22   you've figured out the guidelines for the second count, which

23   ones do you use?  And basically, at the end of the day, given

24   all these disputes, I would either determine that your offense

25   level is Level 22 or I would determine that it's 27.  Those are

1    the two positions we could end up with if we calculate this

2    given everything we've just discussed.

3              Either way, given the fact that you're entering a

4    plea of guilty and accepting your responsibility, it gets

5    reduced by three levels to recognize your acceptance of

6    responsibility.  At that point you are either at a base offense

7    level under the guidelines of 19 or 24.

8              The guidelines then are a grid and they take your

9    base offense level and they go across what your criminal

10   history category is.  And based on what we know now, I think

11   the parties understand that you are likely no fall within

12   Criminal History Category II, although I noticed in the plea

13   paperwork that the parties reserve the right to argue that a

14   different one could apply.

15             Is there some known dispute about that right now, or

16   just waiting to see what happens with the presentence report?

17             MR. BRENNWALD:  There's no known dispute at this

18   point.

19             THE COURT:  Okay.  So once you know what the base

20   offense level is and what the criminal history category is, if

21   I determined that you were at the higher guideline level, Level

22   24, with your criminal history category the guidelines would

23   recommend to me a sentence between 57 and 71 months, which is

24   about four and three-quarters to just under six years.  Are you

25   aware of that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Okay.  And, again, I'm not saying what

3   your sentence is.  I'm just telling you what the guidelines

4   would recommend.  We're a good ways away from the day of the

5   sentencing.

6          But are you also aware that if I found that you were

7   at the lower offense level, with your criminal history score

8   the guidelines would recommend to me a sentence of between 33

9   and 41 months, which is about two and three-quarters to a

10  little under three and a half years.  Do you understand the

11  difference between these two calculations?

12         THE DEFENDANT:  I do, Your Honor.

13         THE COURT:  Okay.  And do you understand that for

14  purposes of the sentencing, you are agreeing that a sentence

15  within the guideline range that I find would be a reasonable

16  sentence?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Okay.  And the parties are both agreeing

19  that they're not going to seek what's called departures, which

20  means things in the guidelines that could send your calculation

21  up or down.  But both sides are reserving the right to ask me

22  to impose a sentence that is not within the guideline range.

23  The government is reserving its right to say it might need to

24  be higher and you are going to have the right to stand up here

25  at the time of sentencing and say it should be less.  Do you

1    understand that that's all part of the agreement?

2              THE DEFENDANT:  Yes, I do, Your Honor.

3              THE COURT:  Okay.  And do you understand that I'm not

4    going to be able to determine even what the guidelines would

5    recommend as your sentence until after we've gotten the

6    presentence report and after your lawyer has had a chance to

7    object to it and the government has had a chance to object to

8    it and then I have to resolve the conflicts that we have here.

9    So at this point I can't even tell you what I think the

10   guideline range is going to be.  Do you understand that?

11             THE DEFENDANT:  I do, Your Honor.

12             THE COURT:  And do you understand that ultimately the

13   sentence imposed may be different from the estimates that we've

14   got in the plea agreement right now?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Okay.  And do you also understand that

17   once I've decided how the guidelines come out in your case, I

18   have the authority to impose a sentence that's either more

19   severe or less severe than what the guidelines would recommend?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  And do you also understand that if the

22   plea ends up being -- the sentence ends up being more severe

23   than what you're hoping for or accounting for at the end of the

24   day, you can't withdraw your plea just for that reason.  Are

25   you aware of that?

1          THE DEFENDANT:  I do, Your Honor.

2          THE COURT:  Okay.  Now, do you understand that parole

3     has been abolished for federal charges and that if you're

4     sentenced to prison, you will serve the sentence I impose, with

5     a possible reduction for good time of up to 54 days a year and,

6     obviously, credit for any time you've already served.  But you

7     won't be released early on parole the way people used to be.

8          THE DEFENDANT:  I know now, Your Honor.

9          THE COURT:  And do you understand that the offense

10    that you're pleading guilty to is a felony, and if your plea is

11    accepted and you're found guilty, then that finding may deprive

12    you of valuable civil rights, such as, depending on where you

13    live, the right to vote, the right to hold public office, the

14    right to serve on a jury, and the right to possess any kind of

15    firearm.  Do you understand that?

16          THE DEFENDANT:  (No response.)

17          THE COURT:  I need you to answer out loud.

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Now, has anybody, Mr. Sibick, including

20    your attorney, the police, the prosecutor or any other person

21    you've come in contact with since your arrest promised you or

22    suggested that merely because you're pleading guilty I will

23    give you a lighter sentence?

24          THE DEFENDANT:  No, Your Honor.

25          THE COURT:  Has anybody forced you or threatened you

1    or coerced you in any way into entering this plea of guilty?

2              THE DEFENDANT:  No.

3              THE COURT:  And we've talked about this letter which

4    has the negotiations -- the result of the long negotiations

5    between your lawyer and the government.  Has anybody made any

6    promises to you about what's going to happen that aren't set

7    out in the letter?

8              THE DEFENDANT:  No, Your Honor.

9              THE COURT:  Has anybody promised you what sentence

10   I'm going to impose in this case if I accept your guilty plea?

11             THE DEFENDANT:  No, Your Honor.

12             THE COURT:  And do you understand that at this point

13   even I don't know what sentence I'm going to impose in your

14   case because I haven't heard what you have to say and what the

15   government has to say and what your lawyer has to say.

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Okay.  Now, do you also understand that

18   even though the government is not asking that I detain you

19   between now and your sentencing date, that that decision is

20   actually up to me?

21             THE DEFENDANT:  I do, Your Honor.

22             THE COURT:  Okay.  Mr. Sibick, are you entering this

23   plea of guilty voluntarily and of your own free will because

24   you are guilty and for no other reason?

25             THE DEFENDANT:  Yes, Your Honor.

 1             THE COURT:  Is there anything you don't understand

 2    about this proceeding or about your plea in this case?

 3             THE DEFENDANT:  No, Your Honor.

 4             THE COURT:  Is there anything you want to ask me or

 5    ask your lawyer before I ask you for your final decision in

 6    this case?

 7             THE DEFENDANT:  No, Your Honor.

 8             THE COURT:  Are you ready now to make a decision

 9    about whether you want to enter a plea of guilty or whether you

10    want to go to trial?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Okay.  And what is your decision?

13             THE DEFENDANT:  I'm going to plead guilty to the

14    charges as written.

15             THE COURT:  Okay.  I'm satisfied that Mr. Sibick is

16    fully competent and capable of making a decision today, that he

17    understands the nature and consequences of what he's doing,

18    that he's acting voluntarily and of his own free will, and that

19    there is an adequate factual basis for his plea.  Therefore, I

20    will accept the plea.

21             I will also, given his compliance with his conditions

22    of release until this date, and the fact that the government is

23    not asking to step him back at this time, permit him to remain

24    on the conditions of release that he has been in compliance

25    with for all this time.  But we need to set a sentencing date,

1    which --

2         MR. BRENNWALD:  Your Honor, we're going to ask that

3    the Court go back, a little further out.  I'm going to be in

4    trial sometime in June and I'm hoping to take a vacation for

5    ten days in July.  Also, his -- one of his brothers is getting

6    married July 8th, so we're going to ask the Court to allow

7    him -- I can do that in the future.  We're going to ask the

8    Court to allow him to attend his brother's wedding on July 8th.

9         Where is that wedding?  Do you know?  In Buffalo?

10         THE DEFENDANT:  In Buffalo.

11         THE COURT:  You don't need to give me the details of

12    where the wedding is going to be now in open court.  You'll

13    submit a motion.  And make sure I get it more than three days

14    before you're asking me to send him somewhere.  And you'll give

15    me all the data and we'll figure it out at that time.

16         MR. BRENNWALD:  I would ask the week of July 24th or

17    31st.

18         THE COURT:  All right.  Let me look at my calendar

19    and figure out -- I'm probably going to be in trial because

20    I'll apparently be in trial for the rest of my life.

21         You said after the 24th?

22         MR. BRENNWALD:  After the 24th or later, anytime that

23    week.  Or anytime.  I don't have any trials again until, I

24    think, September.

25         THE COURT:  All right.  Well, let's make it the week

1     of the 24th, because August -- there's a lot of trials going on

2     in August.  So how about the 28th, at 10 o'clock in the

3     morning?

4                THE BRENNWALD:  That sounds good, Your Honor.

5                And before we finish up here, may I approach with the

6     government again off the record?  The Court can decide whether

7     it needs to be off the record, but I would like to approach.

8                THE COURT:  Okay.  We can do that, but I just want to

9     put one more date on the record before we get there.

10               If the sentence is going to be on the 28th, I would

11    appreciate having the submissions to me by the 18th.

12               MR. BRENNWALD:  Yes, Your Honor.

13               THE COURT:  And as I know you probably know, I know

14    you've had cases before me before, it is -- I do read every

15    letter I get, but it is helpful if they all come together with

16    the sentencing submission.  And if people write me letters on

17    their own, I'm going to docket them anyway, so if they -- it's

18    better if you gather them all and give them to me as exhibits

19    to your submission.  And just make sure that they don't have

20    people's addresses and phone numbers and anything like that on

21    them.

22               All right.  Before you come to the bench, is there

23    anything else we need to talk about on the record right now?

24               MR. BRENNWALD:  No, Your Honor.

25               THE COURT:  All right.  Anything further from the

1    government?

2              MS. PASCHALL:  No, Your Honor.

3              THE COURT:  Then you two can approach.

4              (Sealed bench discussion:)



1

2

3              (Open court:)

4              THE COURT:  All right.  Everybody, I will see you in

5    July, unless there's anything else we need to take up right

6    now?

7              MR. BRENNWALD:  Thank you, Judge.  Appreciate it.

8              THE DEFENDANT:  Thank you, Your Honor.  I appreciate

9    it.

10              MR. BRENNWALD:  Have a good weekend.

11                             *   *   *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, JANICE DICKMAN, do hereby certify that the above and

4     foregoing constitutes a true and accurate transcript of my

5     stenographic notes and is a full, true and complete transcript

6     of the proceedings to the best of my ability.

7                         Dated this 24th day of May, 2024

8

9

10                         _____

11                         Janice E. Dickman, CRR, CMR, CCR
                           Official Court Reporter
12                         Room 6523
                           333 Constitution Avenue, N.W.
13                         Washington, D.C.  20001

14

15

16

17

18

19

20

21

22

23

24

25